UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROBERT LEO HARDESTY, JR., | ) |
| Plaintiff, | ) ) ) |
| v. | )  No. 1:18-cv-03987-JRS-DLP |
| J. WARD, ROY WASHINGTON, | ) ) ) ) |
| Defendants. | ) |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff Robert Leo Hardesty, Jr., who was confined at the Floyd County Jail at the times relevant to this suit, alleges that Sergeant Jimmy Ward ignored orders from the Sheriff to reassign Mr. Hardesty to the "old man block" and assaulted him in a holding cell on August 31, 2018. Mr. Hardesty also alleges that Nurse Practitioner Roy Washington changed Mr. Hardesty's pain prescription and refused to issue him an extra mattress and blanket after he fractured his collar bone. Mr. Hardesty is seeking compensatory damages from the defendants.

Before the Court are the defendants' motions for summary judgment. Dkts. [43] & [46]. Mr. Hardesty has not responded and the time to do so has passed. The motions are now ripe for review. For the reasons explained in this Order, the defendants are entitled to summary judgment on all of Mr. Hardesty's claims.

**I.
Summary Judgment Standard**

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 573-74 (7th Cir. 2017).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II.
## Factual Background

The consequence of Mr. Hardesty's failure to respond to the motions for summary judgment is that he has conceded the defendants' version of the facts. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *see* S.D. Ind. Local Rule 56-1(b) ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment.").

This does not alter the standard for assessing a Rule 56(a) motion but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

The defendant Jimmy Ward's statement of undisputed facts relies, in part, on Mr. Hardesty's untimely and incomplete responses to requests to admit. The defendant served Mr. Hardesty with requests to admit on September 18, 2019, and he responded on December 2, 2019, after the defendant filed a motion to compel. *See* dkt. 38; dkt. 41. A matter is admitted unless denied or objected to in writing within 30 days. Fed. R. Civ. P. 36(a)(3). Mr. Hardesty did not seek additional time to respond to the requests to admit and has made no argument that his failure to timely respond should not result in the admission of the defendant's requests to admit. Therefore, the following statement of facts includes admissions made by Mr. Hardesty through his failure to timely respond to the defendant's requests to admit.[1]

### A. The Defendants

Defendant Sergeant Ward is a correctional officer at the Floyd County Jail. He has never received any specialized medical training, other than routine training provided to jail officers. At no time during Mr. Hardesty's confinement at the Floyd County Jail did Sergeant Ward believe Mr. Hardesty was in actual danger or had a serious medical need. It is typical jail protocol when

---

[1] Even if the Court were to consider Mr. Hardesty's late responses to the requests to admit, some of the requests would still be admitted because Mr. Hardesty did not respond to them. *See* dkt. 48-8. Of particular relevance to this Order, Mr. Hardesty failed to respond to the following requests to admit: "6. Admit that the only harm you suffered from being placed in the open dorm in F-Block was your collarbone injury." The Court notes it need not reach the defendant's argument that some of the requests to admit are admitted simply because Mr. Hardesty did not use the words "admit" or "deny." But "yes," "no," and narrative answers explaining why a request to admit is denied can be acceptable. *See Honeycutt v. First Fed. Bank*, 2003 WL 1054235, at *1 (W.D. Tenn. 2003). Here, Mr. Hardesty is deemed to have admitted all defendant's requests to admit because Mr. Hardesty did not timely respond and has made no argument as to why Rule 36(a)(3) should not be applied.

an inmate complains of physical or mental health issues to refer that inmate to the Mental Health or Medical Department. It is also protocol when it comes to mental or physical health treatment that the medical providers determine whether an inmate needs medication, treatment, or special housing. Over the course of Mr. Hardesty's incarceration in the Floyd County Jail, Sergeant Ward met with him on multiple occasions in response to his grievances about his housing situation. Dkt. 48-7.

Defendant Roy Washington is a nurse practitioner who is licensed in Indiana and Kentucky. Dkt. 44-1. He works for Advanced Correctional Healthcare ("ACH"), a company that contracts with the Floyd County Sheriff to provide medical services to the Floyd County Jail. *Id*.

### B. Mr. Hardesty's Housing Assignment

The Floyd County Jail admitted Mr. Hardesty into the Jail on May 2, 2018. Dkt. 48-3 at 6. Sergeant Ward consulted Mental Health, which cleared Mr. Hardesty to be placed in general population, thus Sergeant Ward placed Mr. Hardesty in the open dorm, F-Block. Dkt. 48-7 at 2. On May 17, 2018, Plaintiff filed a General Grievance through the Floyd County Jail stating that he needed to be moved to a two-man cell instead of being housed in the open dorm, F-block, because of his anxiety. Sergeant Ward responded that he would inform the mental health department of Mr. Hardesty's grievance and discuss the issue with Mr. Hardesty later that day. Dkt. 48-5 at 4. On June 21, 2018, Mr. Hardesty filed another grievance stating his dorm placement exacerbated his anxiety. He further stated he had not seen a doctor, and since the mental health counselor could not prescribe medicine, the jail provider was not qualified to treat mental health. In response, Sergeant Ward explained that he could not make a decision regarding Mr. Hardesty's medical needs and that medical staff would have to make medical decisions. *Id*. at 5.

### C. Mr. Hardesty's Fractured Collarbone

On July 23, 2018, Mr. Hardesty fractured his collarbone. Although he reported slipping in the shower, corrections staff reviewed video evidence which indicated that Mr. Hardesty had been involved in an altercation. Dkt. 44-1 at 21. Jail staff determined that Mr. Hardesty had initiated the altercation. Dkt. 48-5 at 10.

The Floyd Baptist Memorial Hospital emergency room treated Mr. Hardesty, instructed him to wear his arm in a sling, provided him with a prescription for acetaminophen (Tylenol) and twelve doses of hydrocodone 7.5 mg tablets to be taken every six hours as needed for pain with no refills, and ordered a follow-up with orthopedics. Dkt. 44-1 at 60, 62.

Following Mr. Hardesty's discharge and return to the jail, N.P. Washington ordered Ibuprofen 600 mg. twice a day for five days and to make a follow-up appointment with orthopedics as instructed by the emergency room discharge paperwork. Per N.P. Washington's direction, ice was to be applied as directed, three to four times a day to the sore area for two days and Mr. Hardesty was to have a bottom bunk and continue wearing his sling and swathe. Dkt. 44-1 at 22.

When treating patients at Floyd County Jail, N.P. Washington bases his diagnoses and treatment decisions on a patient's subjective complaints, objective conditions, and his reasoned medical judgment developed over his years of practicing medicine. Dkt. 44-1 at 3.

As a nurse practitioner, N.P. Washington can prescribe what medication he believes is medically necessary and appropriate for a patient including the decision whether an individual should receive a narcotic pain medication. Mr. Hardesty did not have surgery and N.P. Washington generally tries to avoid narcotic pain medication until less addictive medications have failed or unless the diagnosis truly calls for narcotic pain medication, like someone who has just had a surgery or someone being treated for certain types of cancers. *Id*.

On July 25, 2018, medical staff at Floyd County Jail faxed Mr. Hardesty's medical records to Dr. Bell's office, an orthopedic surgeon, and his office scheduled an appointment for Mr. Hardesty on August 2, 2018. *Id*. at 79-81. On July 30, 2018, Mr. Hardesty had a follow-up examination with N.P. Washington who noted that Mr. Hardesty had been seen in the Baptist Floyd Emergency Room on July 23, 2018, with a fracture of his clavicle. N.P. Washington observed that Mr. Hardesty's left clavicle fracture was stable and that he was scheduled to be seen by an orthopedic surgeon on August 2, 2018. N.P. Washington gave no new orders on that day, since Mr. Hardesty was doing well. *Id*. at 3.

N.P. Washington was never informed by nursing staff that Mr. Hardesty asked for an extra blanket or mattress and he has no recollection of Mr. Hardesty requesting one directly from him. Typically, the jail officers are responsible for handing out blankets and mattresses. As a provider, N.P. Washington can order that someone receives an extra blanket or mattress for a specific medical reason, but there was no medical reason for Mr. Hardesty to have an extra blanket or mattress so N.P. Washington would not have ordered one for Mr. Hardesty even if he had requested one. Mr. Hardesty had a fractured clavicle, which was immobilized with a sling and swathe and an extra blanket or mattress would not have aided or affected this medical condition. Mr. Hardesty had a prescription for ibuprofen for pain from the day of his injury until he left the Floyd County Jail. *Id*. at 4-5.

**D. Use of Force Incident**

On August 31, 2018, officers were called to C-block due to Mr. Hardesty acting non-compliant and hiding a book in his pants to keep it away from officers. Mr. Hardesty was patted down, handcuffed, taken to the booking area, and placed in a cell. Sergeant Ward along with other officers then searched C-2, where Mr. Hardesty had been housed and found damage to the wall

6

below the sprinkler head in the cell. After being taken to booking, Mr. Hardesty slipped his handcuffs to the front of his body and did not comply with orders. He shattered the glass to the cell where he was initially taken when he arrived at booking. Mr. Hardesty shattered the glass by beating his handcuffs against the cell glass. Dkt. 48-7 at 2-3.

Officers in booking called for backup due to the threat Mr. Hardesty posed. The officers retrieved leg shackles and placed them on Mr. Hardesty after entering his cell. Sergeant Ward gave Mr. Hardesty clear verbal commands multiple times to lie down in the prone position. Once Mr. Hardesty laid down, additional officers entered the cell to place him in restraints. After his upper body was secure, Mr. Hardesty started to resist and fight the officers restraining him. He then tried to place his hands under his body and told the officers that he "would shit all over them." When the officers, including Sergeant Ward, attempted to restrain Mr. Hardesty due to his threatening behavior, he defecated on himself. Mr. Hardesty then complied with Sergeant Ward's verbal commands to stop resisting and complied with further commands asking him to roll over and pull his knees to his chest to be stood up. At no time did Sergeant Ward jump on, put his knee on, or lean his body weight on Mr. Hardesty. Sergeant Ward did not strike, hit, punch, or kick Mr. Hardesty. Dkt. 48-7 at 4.

After being secured, Mr. Hardesty was moved to a different holding cell and searched again for contraband. He was then secured in a safety restraint chair. Dkt. 48-7 at 3-4. After remaining in the restraint chair for approximately two hours, Mr. Hardesty was removed from it. Nurse Marlena Beacraft then checked and cleared Hardesty. Dkt 48-6 at 15.

### III.
### Discussion

Mr. Hardesty was a pretrial detainee at the time of the alleged incident.[2] Therefore, the question of whether the defendants subjected Mr. Hardesty to cruel and unusual punishment is analyzed under the Fourteenth Amendment. "[A] pretrial detainee can prevail by providing objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley v. Hendrickson*, 576 U.S. 389, 400-01 (2015).

Sergeant Ward moves for summary judgment arguing that he made objectively reasonable decisions related to Mr. Hardesty's housing assignment and did not use excessive force against Mr. Hardesty during the incident on August 31, 2018. The evidence before the Court is that Sergeant Ward deferred to the professional judgment of medical staff to determine whether Mr. Hardesty needed to be placed in a two-man cell. There is no evidence that the Sheriff ordered Sergeant Ward to assign Mr. Hardesty to a particular housing assignment.

Sergeant Ward had no reason to believe that Mr. Hardesty was in danger. Mr. Hardesty requested a cell not because of specific threats from other inmates, but due to his anxiety. And the evidence shows that Mr. Hardesty initiated the altercation that led to his fractured collarbone. Dkt. 48-5 at 10. Furthermore, when Mr. Hardesty returned from the hospital, medical staff

---

[2] Defendant Washington notes in his brief that Mr. Hardesty may have been on parole while he was incarcerated at the Floyd County Jail. Dkt. 44 at 10. Defendant Ward notes without citation that Mr. Hardesty was sentenced on August 16, 2018, before his interaction with Sergeant Ward on August 31, 2018. Since neither party has offered admissible evidence that Mr. Hardesty was not a pretrial detainee, the Court analyzes Mr. Hardesty's claims under *Kingsley*'s objective standard pursuant to the Fourteenth Amendment rather than under the Eighth Amendment standard. If Mr. Hardesty is not entitled to relief under the more liberal standard for pretrial detainees, he would not be entitled to relief under the Eighth Amendment either.

determined that he did not require medical watch. It is objectively reasonable for correctional staff to rely on the professional determinations of medical staff. Sergeant Ward is entitled to summary judgment on this claim.

Next the Court considers Mr. Hardesty's claim that Sergeant Ward employed excessive force during his interaction with Mr. Hardesty on August 31, 2018. The undisputed evidence before the Court is that Sergeant Ward used the minimal force necessary to maintain discipline due to Mr. Hardesty's noncompliance with orders. Sergeant Ward had to enter Mr. Hardesty's cell because Mr. Hardesty had just broken glass in a cell by beating it with his handcuffs after slipping them in front of his body. It was reasonable for Sergeant Ward to place his hands on Mr. Hardesty's upper body and secure his hands and arms because he was behaving in an erratic and threatening manner. The force was rationally related to a legitimate governmental objective and was not excessive in relation to that purpose. There is no evidence that Mr. Hardesty suffered any injury as a result. Sergeant Ward is also entitled to summary judgment on this claim.

Finally, the Court considers N.P. Washington's motion for summary judgment. Mr. Hardesty's complaint alleged that N.P. Washington violated Mr. Hardesty's constitutional rights when he failed to provide Mr. Hardesty with an extra mattress and blanket and when he provided Mr. Hardesty with ibuprofen instead of hydrocodone after Mr. Hardesty returned from the hospital with a fractured collarbone.

There is no evidence that Mr. Hardesty requested an extra mattress and blanket from N.P. Washington, including during his medical visit on July 30, 2018. Upon Mr. Hardesty's discharge from the hospital, N.P. Washington ordered that Mr. Hardesty have a bottom bunk and continue to wear his sling and swathe. There is no evidence that his condition required more accommodation than that. It is unclear how an extra mattress or blanket would have affected Mr. Hardesty's medical

9

condition and there is no evidence that the failure to provide either one caused him any further harm.

As for Mr. Hardesty's claim regarding N.P. Washington's substitution of a non-narcotic prescription, it is not objectively unreasonable for a medical provider such as N.P. Washington to use his medical judgment and prescribe an alternative to narcotic pain medication. *See Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012). "([T]he prison physician, as the inmate's acting primary care doctor, is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards.")

Although the hospital physician prescribed twelve doses, or three days of hydrocodone, N.P. Washington decided to first prescribe a less-addictive non-narcotic method of pain relief to see if it could control Mr. Hardesty's pain. Such a decision in these circumstances is objectively reasonable. N.P. Washington was never informed that the ibuprofen was not effectively controlling Mr. Hardesty's pain. Therefore, there was no reason for N.P. Washington to revisit this issue or consider another pain medication. For these reasons, N.P. Washington is entitled to summary judgment.

Mr. Hardesty has failed to rebut the defendants' evidence. Because there is no evidence that the defendants violated Mr. Hardesty's constitutional rights, they are entitled to summary judgment.

## IV.
## Conclusion

For the reasons stated above, the defendants' motions for summary judgment, dkts. [43] & [46], are **granted**. Final judgment consistent with this Order shall issue.

**IT IS SO ORDERED.**

Date: 8/17/2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

ROBERT LEO HARDESTY, JR.
854546
PENDLETON – CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Christine Marie Clark
KIGHTLINGER & GRAY LLP
cclark@k-glaw.com

Carol A. Dillon
BLEEKE DILLON CRANDALL, P.C.
carol@bleekedilloncrandall.com

Corey J. Dunn
KIGHTLINGER & GRAY LLP
cdunn@k-glaw.com

Jill Esenwein
BLEEKE DILLON CRANDALL ATTORNEYS
jill@bleekedilloncrandall.com

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP (New Albany)
jlowe@k-glaw.com